UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEBORAH H.,

        Plaintiff,

v.

                                        19-CV-425 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## DECISION AND ORDER

Plaintiff Deborah H.[1] ("Plaintiff") brings this action under the Social Security Act, seeking review of a determination by the Commissioner of Social Security ("the Commissioner") that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 9. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 13. Plaintiff replied. Dkt. 16.

For the reasons stated below, this Court grants Plaintiff's motion in part and denies the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order entitled "In Re: The Identification of Non-Government Parties in Social Security Opinions," this Decision and Order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits under Title II on March 10, 2015. Tr. 13.[2] She claimed that she had been disabled beginning June 1, 2008 due to chronic obstructive pulmonary disease ("COPD"), chronic bronchitis, bronchial asthma, emphysema, cervical and lumbar degenerative disc disease, bilateral hearing loss, tinnitus, hypertension, diabetes, anxiety, and depression. *See* Tr. 13, 15-16, 179. Plaintiff's claim was denied on July 22, 2015. Tr. 13. She requested a hearing before an administrative law judge ("ALJ"), which occurred on October 17, 2017. Tr. 13. The ALJ issued a decision on March 30, 2018, finding that Plaintiff was not disabled. Tr. 23. Plaintiff appealed the ALJ's decision, which the Appeals Council denied on March 19, 2019. Tr. 1, 7. Plaintiff then commenced this action.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (*quoting Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

---

[2] Docket 4 is the transcript of proceedings before the Social Security Administration. All references to Docket 4 are denoted "Tr. __."

Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II.   DISABILITY DETERMINATION

In denying Plaintiff's application, the ALJ evaluated Plaintiff's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a)(2). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not

disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.*

But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to calculate the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(a)(4)(iv), (d)-(e); 416.920(a)(4)(iv), (d)-(e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* §§ 404.1545, 416.945. After determining the claimant's RFC, the ALJ completes step four. *Id.* § § 404.1520(e), 416.920(e). If the claimant can perform past relevant work, she is not disabled and the analysis ends. *Id.* §§ 404.1520(f), 416.920(f). But

if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* §§ 404.1520(a)(4)(iv), (f); 416.920(a)(4)(iv), (f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). More specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

## I.   ALJ DECISION

The ALJ analyzed Plaintiff's disability claim under the five-step process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 1, 2008 through her last-insured date of December 31, 2012. Tr. 15. At step two, the ALJ found that Plaintiff had the following severe impairments through that last-insured date: transient ischemic attack, cervical and lumbar degenerative disc disease, COPD, bronchial asthma, chronic bronchitis, lung nodules, hearing loss, and tinnitus. Tr. 15. At step three, the ALJ found that those impairments did not meet or medically equal any impairments listed in the regulations. Tr. 17. At step four, the ALJ determined that Plaintiff:

5

> . . . [T]hrough the date last insured . . . had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except that she could frequently climb ramps and stairs, climb ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl. She could tolerate frequent exposure to fumes, odors, dust, gases and other pulmonary irritants. She also required a work environment with no greater than a moderate noise level.

Tr. 18. The ALJ also found that Plaintiff could perform her past relevant work as a detective through her last insured date, and that her RFC did not preclude her from performing that work. Tr. 23. The ALJ noted that the vocational expert testified that the Dictionary of Occupational Titles classifies a detective as light skilled work, but that Plaintiff had "actually performed . . . [the work] at a very heavy exertional level." Tr. 23. Accordingly, the ALJ determined that Plaintiff was not disabled as defined under the Act.

## II.   ANALYSIS

### A. The RFC is not supported by substantial evidence regarding Plaintiff's hearing loss.

Plaintiff contends that the RFC is not based on substantial evidence because the ALJ did not rely on any medical opinion from a treating physician in his analysis, instead relying on a "lay interpretation of the bare medical findings . . . ." Dkt. 9-1, at 10. Specifically, Plaintiff argues that the ALJ did not properly evaluate or weigh assessments by her ear, nose, and throat ("ENT") specialist, Dr. Stanievich, regarding her lack of binaural hearing, her sound location difficulties, and her difficulties hearing voices in crowds. *Id.* With no medical source opinion to rely on, the ALJ could not render a "common sense judgment" based on the record. *Id.* at 11. This Court agrees for the following reasons.

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Williams v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 411, 416-16 (W.D.N.Y. 2019) (citing and quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). While an ALJ may render a "common sense judgment about functional capacity even without a physician's assessment," that is only proper where the record is "clear," where a claimant has only minor physical impairments, and where there is still "some useful assessment of the claimant's limitations from a medical source." *Williams*, 366 F. Supp. 3d at 417-18 (citations and internal quotation marks omitted). Otherwise, the ALJ may not interpret "raw medical data in functional terms" to form an RFC. *Id.* at 417; *see also Henderson v. Berryhill*, 312 F. Supp. 3d 364, 371 (W.D.N.Y. 2018) (holding that an ALJ's RFC finding was improper "[i]n the absence of the medical opinions rejected by the ALJ" and where the ALJ relied upon "raw medical data" in the plaintiff's treatment notes). Consequently, where an ALJ determines an RFC for a claimant with severe impairments "without a medical advisor's assessment," that RFC is not supported by substantial evidence. *Gulczewski v. Comm'r of Soc. Sec.*, 464 F. Supp. 3d 490, 496 (W.D.N.Y. 2020) (citing and quoting *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016)).

Here, the ALJ had no competent opinion evidence to consider in forming his RFC and appears to have based his RFC finding on his own interpretation of the raw medical data. The only opinion evidence noted in the ALJ's decision is a July 2015 report by a state agency consultant, Dr. C. Butensky. Tr. 21, 69-75. Dr.

7

Butensky opined that, while Plaintiff's doctors did send medical reports, "there was insufficient evidence to make a disability determination" through Plaintiff's last insured date of December 31, 2012. Tr. 21, 73. Dr. Butensky's report also noted that "[t]here is no indication that there is medical or other opinion evidence" in Plaintiff's medical records. Tr. 74. The Agency's Single Decisionmaker (SDM) also summarized Plaintiff's medical history, but noted that "no thorough exam was performed during the adjudicative period," and that "[e]vidence is insufficient to rate" Plaintiff's claim. Tr. 72. The ALJ assigned "little weight" to Dr. Butensky's opinion, finding that his own review of the record showed that Plaintiff's impairments "were more limiting than was concluded by Dr. Butensky." Tr. 22.

While the ALJ did not necessarily err in assigning little weight to Dr. Butensky, this did leave him with no opinion evidence whatsoever to consider. Because a disability hearing is inquisitorial, rather than adversarial, "the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). None of Plaintiff's treating physicians provided a medical source statement, and their treatment notes do not contain a useful assessment of her functional capacity. This is further complicated by the fact that Dr. Butensky's opinion was in no way substantial, and only concluded that there was insufficient evidence to determine disability. This threadbare medical opinion from a non-treating source, once discounted, created a gap in the record.

Although an ALJ can still make a "common sense judgment" as to a plaintiff's RFC where the record is otherwise clear and the impairments are minimal, that is

8

not the case here. *Williams*, 366 F. Supp. 3d at 417-18. Plaintiff has multiple

severe impairments, including binaural hearing loss, tinnitus, and COPD. Tr. 15.

Regarding her hearing problems, Plaintiff's ENT specialist, Dr. Stanievich, noted

multiple times during Plaintiff's alleged disability period that she is "quite deaf"

and that she was lip reading. Tr. 352; *see also* Tr. 348; 804; 812. Plaintiff's

binaural hearing loss had caused a lack of "consequent sound location abilities" and

had caused difficulty hearing in crowds. Tr. 349.

Dr. Stanievich diagnosed Plaintiff with both a eustachian tube disorder and

bilateral sensorineural hearing loss. Tr. 804. She underwent an audiogram in

November 2011, which revealed "a mild to moderate sensorineural hearing loss in

the right ear and a mild to moderately severe sensorineural hearing loss in the left

ear." Tr. 806-07. Dr. Stanievich notes that this audiogram showed "asymmetric

sensorineural hearing loss" without further discussion or opinion. Tr. 349. Plaintiff

also underwent a diagnostic brain MRI in December 2011, which was "somewhat

suboptimal" due to a lack of IV contrast, and which noted a trace amount of fluid

but did not reveal "any acoustic tumors." Tr, 810-12, 20. Dr. Stanievich also noted

that a second hearing aid would help her "substantially," though Plaintiff has not

pursued this option due to the high cost. Tr. 349; *see also* Tr. 21, 42. Beyond these

diagnostic tests and observations, Dr. Stanievich does not provide any sort of

functional assessment of Plaintiff's deafness. *See* Tr. 348; 352; 804; 812.

Dr. Stanievich noted that Plaintiff's hearing loss was caused by her years of

work with the police, which exposed her to "loud sirens in closed, small areas, gun

fire, loud electronic megaphones while working with a hostage negotiation crew and multiple alarms going off in tight, confined spaces" without hearing protection.  Tr. 349.  Plaintiff testified that her deafness was one of her main motivations to stop working as a detective, and subjectively complained that she could not hear while testifying in courtrooms and that she could only read a person's lips "if [she is] looking right at them."  Tr. 39-41.  At one point during her hearing testimony, she even had difficulty hearing the ALJ.  *See* Tr. 33.  It is not clear on this record how this is substantial evidence for the Commissioner's decision regarding Plaintiff's hearing loss without a useful functional assessment or other opinion from Dr. Stanievich.

Defendant argues that the ALJ's RFC determination does not need to track any one medical opinion on the record.  Dkt. 13-1, at 11-15.  But this is not the case here.  "[T]his is not a matter of an ALJ's RFC finding simply diverting somewhat from the supporting medical opinion," but rather a matter where there was no medical opinion to consider at all.  *Dennis*, 195 F. Supp. 3d at 474.  To support its argument, Defendant relies on the Second Circuit's summary orders in the cases of *Corbiere v. Berryhill*, 760 F. App'x 54 (2d Cir. 2019), *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5 (2d Cir. 2017), *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29 (2d Cir. 2013), and *Pellam v. Astrue*, 508 F. App'x 87 (2d Cir. 2013).

In those cases, however, there was at least a useful assessment of the claimants' functionality from a treating source to help guide the ALJ, even if no formal medical opinion on the claimant's RFC received controlling weight.  *See*

10

*Corbiere*, 760 F. App'x at 57; *Monroe*, 676 F. App'x at 8-9; *Tankisi*, 521 F. App'x at 33-34; *Pellam*, 508 F. App'x at 90; *see also Williams*, 366 F. Supp. 3d at 417. The Court therefore finds this argument unpersuasive.

Without a medical opinion on the record, without a useful assessment of Plaintiff's functional limitations, and with evidence suggesting severe limitations regarding Plaintiff's hearing loss, the RFC is not supported by substantial evidence. *See Williams*, 366 F. Supp. 3d at 417; *Spivey*, 338 F. Supp 3d at 128-29. Further, it is possible that further proceedings may change the vocational expert's testimony and the ALJ's occupation analysis at step five, which found that Plaintiff could return to her job as a detective. Tr. 23. Therefore, remand is warranted for further administrative proceedings.

## B. Plaintiff's Remaining Arguments

While Plaintiff's argument focuses on whether the ALJ erred in not properly considering her binaural hearing loss and her assessments by Dr. Stanievich, she also disputes how the ALJ considered her breathing and back problems in forming the RFC. *See* Dkt. 9-1, at 12-13. Because this Court remands for further administrative proceedings for other reasons, this argument will not be addressed here. *See, e.g., Insalaco v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 401, 410 (W.D.N.Y. 2019) (declining to reach additional arguments where the court had determined remand for further administrative proceedings was necessary); *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (same); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y.

11

Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings (Dkt. 9) is **GRANTED IN PART**, and the Commissioner's cross motion for judgment on the pleadings (Dkt. 13), is **DENIED**.  The matter is **REMANDED** for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:      April 23, 2021
            Buffalo, New York


JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE